# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNENVIRONMENT, INC., and  <br>CLEAN AIR COUNCIL  <br>  <br>Plaintiffs,  <br>  <br>ALLEGHENY COUNTY HEALTH DEPARTMENT,  <br>  <br>Plaintiff-Intervenor,  <br>v.  <br>  <br>UNITED STATES STEEL CORP.,  <br>  <br>Defendant. | Civil Action No.:  <br>2:19-cv-00484-MJH |

## DEFENDANT UNITED STATES STEEL CORPORATION'S ANSWERS TO PENNENVIRONMENT'S FIRST SET OF INTERROGATORIES

Defendant United States Steel Corporation ("U.S. Steel"), by and through its counsel, serves the following Responses to Plaintiffs' First Set of Interrogatories.

{B4554882.1}

## GENERAL OBJECTIONS

1. U. S. Steel objects to the interrogatories, and the definitions and instructions contained therein, to the extent they impose upon U. S. Steel any obligations greater than those imposed by the Federal Rules of Civil Procedure.

2. U. S. Steel objects to producing any information protected by the attorney-client privilege, work product doctrine, non-testifying expert privilege or any other applicable privilege.

3. U. S. Steel objects to the interrogatories to the extent they seek disclosure of information that is not in U. S. Steel's possession, custody or control.

4. A response to a document request or interrogatory stating that responsive documents will be produced shall not be deemed or construed to mean that there are, in fact, responsive documents or that U. S. Steel acquiesces in the characterization of the activities or conduct contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

5. U. S. Steel expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6. These General Objections are incorporated by reference as if fully set forth in the response to each individual response below. U. S. Steel reserves the right to include additional objections as they become apparent.

## RESPONSES TO PENNENVIRONMENT'S INTERROGATORIES

1. Describe the cause or causes of the December Fire, any subsequent corrective or preventive measures implemented, and any subsequent corrective or preventive measures considered but not implemented.

**RESPONSE:**

**U. S. Steel objects to this request as being overly broad, unduly burdensome and seeking information that is irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its General Objections, information responsive to this request can be found in the origin and cause report and the incident report documents related to the December 24, 2018 incident, which are being produced.**

2. Describe the cause or causes of the June Fire, any subsequent corrective or preventive measures implemented, and any subsequent corrective or preventive measures considered but not implemented.

**RESPONSE:**

{B4554882.1}　　　　　　　　　　　　　　　　2

**U. S. Steel objects to this request as being overly broad, unduly burdensome and seeking information that is irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its General Objections, information responsive to this request can be found in the incident report documents related to the June 17, 2019 incident, which are being produced.**

3. Describe the cause or causes of any other fires or explosions in the same or similar process areas of the Clairton Coke Works as the December and June Fires and any subsequent corrective or preventive measures implemented.

**RESPONSE:**

**U. S. Steel objects to this request as being vague and ambiguous with respect to the phrase "in the same or similar process areas of the Clairton Coke Works." U. S. Steel has interpreted this phrase to apply to Control Room 1 and Control Room 2 at the Clairton Plant. U. S. Steel further objects to this request as being overly broad and seeking information that is irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its General Objections, information responsive to this request can be found in the incident report documents that are being produced.**

4. Describe the measures U.S. Steel would need to take put the coke ovens at Clairton Coke Works on hot idle, any equipment or materials needed for such measures, and the amount of time required to take each such measure.

**RESPONSE:**

**This request seeks information that is Confidential Information pursuant to the Stipulated Protective Order entered in this case. U. S. Steel's response is attached as Attachment 1.**

5. Provide the amounts of capital costs and operation and maintenance costs of each measure described in Interrogatory No. 4.

**RESPONSE:**

**This request seeks information that is Confidential Information pursuant to the Stipulated Protective Order entered in this case. U. S. Steel's response is attached as Attachment 1.**

6. Provide the amounts of any anticipated repair costs in bringing coke ovens at Clairton Coke Works back into production following a period of hot idle.

**RESPONSE:**

**This request seeks information that is Confidential Information pursuant to the Stipulated Protective Order entered in this case. U. S. Steel's response is attached as Attachment 1.**

7. If U.S. Steel purchased coke for the Mon Valley Works while the desulfurization plant was down after the December Fire, provide the amount and cost; if it did not, explain why not.

**RESPONSE:**

**This request seeks information that is Confidential Information pursuant to the Stipulated Protective Order entered in this case. U. S. Steel's response is attached as Attachment 1.**

8. What was the financial value to U.S. Steel of continuing to run the Clairton Coke Works while the desulfurization plant was down after the December Fire?

**RESPONSE:**

**U. S. Steel objects to this request as being vague and ambiguous as to the phrase "financial value" and as seeking information that is irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. U. S. Steel further objects to this request to the extent it prematurely seeks information that requires an expert analysis and opinion.**

9. Identify the employees responsible for maintaining and/or monitoring employee and equipment safety for those units and equipment at Clairton Coke Works that were involved in the December and June Fires, for the period 2018 to the present.

**RESPONSE:**

**U. S. Steel objects to this request as being vague and ambiguous with respect to the phrase "those units and equipment at Clairton Plant that were involved in the December and June Fires." For the December 24, 2018 incident, U. S. Steel has interpreted this phrase to apply to the C-521 vacuum machine in Control Room 2. For the June 17, 2018 incident, U. S. Steel has interpreted this phrase to apply to the transformer and tie breaker involved in the incident and located in Control Room 1 and the C-533 vacuum machine in Control Room 2. Subject to and without waiving the foregoing objections and its General Objections, see the incident report documents that U. S. Steel is producing, which identify persons involved in the incidents and witnesses.**

10. Identify any contractors retained for making repairs and performing maintenance on those units and equipment that were involved in the December and June Fires, for the period 2014 to the present.

**RESPONSE:**

**U. S. Steel objects to this entire request as being vague and ambiguous. For the December 24, 2018 incident, U. S. Steel has interpreted this phrase to apply to the C-521 vacuum machine in Control Room 2. For the June 17, 2018 incident, U. S. Steel has interpreted this phrase to apply to the transformer and tie breaker involved in the incident and located in Control Room 1 and the C-533 vacuum machine in Control Room 2. U. S. Steel has also interpreted "making repairs and performing maintenance" to refer to regular repair and maintenance work, not repair or maintenance work performed as the result of the December 24, 2018 or June 17, 2018 incidents. Subject to and without waiving the foregoing objections and its General Objections, U. S. Steel uses its own employees for maintenance and repair work on the transformers, breakers and vacuum machines in the control rooms, except that Test Oil performs oil tribology services on the vacuum machines and SKF Reliability Systems performs vibration analyses on the vacuum machines.**

11. Provide the quantities of benzene, toluene, and xylene produced or recovered on a monthly basis at the Clairton Coke Works light oil recovery plant for each month from December 2017 through November 2018.

**RESPONSE:**

**This request seeks information that is Confidential Information pursuant to the Stipulated Protective Order entered in this case. U. S. Steel's response is attached as Attachment 1.**

12. Provide the quantities of coal charged and coke produced on a monthly basis at the Clairton Coke Works for each month from December 2017 through November 2018.

**RESPONSE:**

**This request seeks information that is Confidential Information pursuant to the Stipulated Protective Order entered in this case. U. S. Steel's response is attached as Attachment 1.**

| | |
|---|---|
| Dated:   10-31-19 | */s/ Mark K. Dausch* <br> Mark K. Dausch <br> PA I.D. No. 205621 <br> James D. Mazzocco <br> PA I.D. No. 318410 <br><br> Babst, Calland, Clements and Zomnir, P.C. <br> Two Gateway Center, 6th Floor <br> 603 Stanwix Street <br> Pittsburgh, Pennsylvania 15222 <br> (412) 394-5655 <br><br> *Counsel for Defendant,* <br> *United States Steel Corporation* |

5. Provide the amounts of capital costs and operation and maintenance costs of each measure described in Interrogatory No. 4.

**RESPONSE:**

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**

[REDACTED]

6. Provide the amounts of any anticipated repair costs in bringing coke ovens at Clairton Coke Works back into production following a period of hot idle.

**RESPONSE:**

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**

**U. S. Steel objects to this request as being vague, ambiguous and seeking information based on an incomplete hypothetical scenario. Subject to and without waiving the foregoing objections and its General Objections, U.S. Steel cannot reasonably estimate the repair costs under a hypothetical scenario in which all of the coke batteries at the Clairton Plant were placed on hot idle status for some unspecified period of time and then returned to coke-making operations because repair costs would be highly dependent on the extent of refractory and structural damage caused by the hot idle.**

7. If U.S. Steel purchased coke for the Mon Valley Works while the desulfurization plant was down after the December Fire, provide the amount and cost; if it did not, explain why not.

**RESPONSE:**

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**

**U. S. Steel objects to this request as being vague and ambiguous with respect to the phrase "for the Mon Valley Works." Subject to and without waiving the foregoing objections and its General Objections, U. S. Steel did not purchase coke for use at the Mon Valley Works as a result of the December 24, 2018 incident, however, as of September 13, 2019, it has purchased approximately 142,216.80 tons of coke from third parties to replace coke that would have been produced at the Clairton Plant if U. S. Steel did not decrease coke production following the December 24, 2018 incident.** [REDACTED]

## VERIFICATION

I, _Michael S. Rhoads_, am authorized to make this Verification on behalf of United States Steel Corporation ("U. S. Steel"). I verify that the factual information set forth in above is accurate to the best of my personal knowledge or on information and belief. The factual information set forth above includes facts of which I am personally aware and facts that have been collected from other individuals. I am providing this verification because no single individual has personal knowledge of all of the factual information set forth above. I further state that this verification is made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

Dated: _10/31/19_

_[signature]_

_Plant Manager Clairton Works_
Title

{B4554882.1}

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing as, this 31 day of October, 2019, served via e-mail upon the following:

Thomas J. Farrell, Esq.
Farrell, Reisinger & Comber, LLC
300 Koppers Building
436 Seventh Avenue
Pittsburgh, PA  15219

Joshua R. Kratka, Esq.
Charles C. Caldart, Esq.
Margaret M. A. Nivison, Esq.
National Environmental Law Center
294 Washington Street, Suite 500
Boston, MA  02108

David Nicholas, Esq.
20 Whitney Road
Newton, MA  02460

**Counsel for the Plaintiffs**

Jason K. Willis, Esq.
Michael Parker, Esq.

Allegheny County Health Department
301 39th Street Building 7
Pittsburgh, PA 15201-1811

**Counsel for the Plaintiff-Intervenor**

BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.

  */s/  Mark K. Dausch*

{B4554882.1}