IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNENVIRONMENT, INC. and<br>CLEAN AIR COUNCIL,<br><br>        Plaintiffs,<br><br>ALLEGHENY COUNTY HEALTH<br>DEPARTMENT,<br><br>        Plaintiff-Intervenor,<br><br>    v.<br><br>UNITED STATES STEEL<br>CORPORATION,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 19-484<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

### I. **BACKGROUND**

Presently before the Court is Defendant's Unopposed Motion for Leave to File Documents Under Seal (Docket No. 115, hereinafter "Motion"). Furthermore, Defendant supplied the Court with unredacted copies of each of the documents at issue, and the Court has conducted an *in camera* inspection of those unredacted documents. Plaintiffs do not oppose Defendant's Motion which is now ripe for decision. The Motion will be granted for the reasons explained below.

Defendant's Motion seeks leave for Plaintiffs to file sealed and redacted copies of certain documents that Plaintiffs wish to cite to and file as exhibits in their responses to dispositive motions and motions that relate to expert witnesses. The documents sought to be redacted or sealed from public access include: (i) certain portions of the August 31, 2019 report of Plaintiffs' expert, Dr. Ranajit Sahu (the "Sahu Report") comprised of four photographs depicting private and sensitive

1

areas of Defendant's facilities that are not otherwise accessible to the public,[1] along with an infographic and related text containing a detailed breakdown of Defendant's coke production costs from 2014-2017;[2] and (ii) Defendant's entire response to Interrogatory No. 5 and the final sentence of its response to Interrogatory No. 7 of Plaintiff PennEnvironment, Inc.'s First Set of Interrogatories.[3]  Each of these documents have been designated by the parties as containing "Confidential Information" and are therefore protected from dissemination and use outside of the instant litigation pursuant to the Court's Stipulated Protective Order entered on September 9, 2019. (Docket No. 36).

There are four photographs of Defendant's facility contained in the Sahu Report that are at issue here which were taken by Plaintiffs during a site visit conducted solely for purposes of this litigation. Defendant avers that its facilities, including those depicted in these photographs, are protected by security gates and checkpoints preventing unauthorized entry along with signage posted at every entrance stating that photography and videography are strictly prohibited. (Docket No. 115, ¶¶ 7-8).  Defendant contends that the public dissemination of these photographs would pose a security risk because they depict sensitive areas of Defendant's facilities that are not otherwise accessible by the public.  (*Id.* ¶ 9).  Plaintiffs assent to the proposed redaction of these photographs, averring in part that the redaction of these photographs will have no impact on the public's understanding of Dr. Sahu's opinions.  (*Id.* ¶ 10).

The infographic and related text contained at page 21 of the Sahu Report contains a detailed breakdown of its coke production costs from 2014-2017, and Defendant avers that its competitors could use this information to discern its current coke production or operational costs, labor needs,

---

[1]     Docket No. 115, Exhibit 1 at pp. 10-11, 40, 41.
[2]     Docket No. 115, Exhibit 1 at p. 21.
[3]     Docket No. 115, Exhibit 2 at p. 8.

and profit margin on steel. (Docket No. 115, ¶ 13). Moreover, the final sentence of its response to Interrogatory No. 7 reveals Defendant's cost to purchase coke from third parties following the December 24, 2018 incident at issue in this litigation, so Defendant contends[4] that "[i]f a competing coke producer were to obtain this information, they could easily undercut [Defendant's] and other coke suppliers and upset the domestic (and potentially global) steel market." (*Id.* ¶ 14). Plaintiff assents to the proposed redaction of this information, averring that this information is not relevant to their forthcoming filings and therefore its redaction will have no impact on the public's understanding of those filings. (*Id.* ¶ 17).

Finally, Defendant's response to Interrogatory No. 5 reveals highly confidential information pertaining to its cost for idling all batteries at its Clairton Plant. (Docket No. 115, ¶ 21). Defendant explains that the process for idling these batteries is "an incredibly complex and time-consuming process that can only be performed by personnel with extensive knowledge of engineering and coke production, as well as specialized knowledge of the individual battery(ies) being idled." (*Id.* ¶ 22). Defendant further explains that this information is "unique, highly valuable" to it, having been developed and refined throughout the 117 years since Defendant began operating its Clairton Plant in 1904, and that it could not be reproduced without this century-long development of knowledge and experience. (*Id.* ¶ 23). Also, Defendant states that this information is not disseminated beyond a limited number of upper-management-level employees within the company and not disseminated to anyone outside of the company. (*Id.*). Plaintiff assents to the proposed redaction of this information, averring that this information is not relevant to their

---

[4] Defendant also avers that the Sherman Antitrust Act prohibits it from sharing such detailed pricing and cost information with its competitors, citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999) and *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877 ( N.D. Ill. 2009). (Docket No. 115, ¶ 15).

forthcoming filings and therefore its redaction will have no impact on the public's understanding of those filings. (*Id.* ¶ 24).

## II. APPLICABLE STANDARDS AND FINDINGS

The public has a right to access certain judicial records and proceedings pursuant to common law and the First Amendment to the United States Constitution. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). The public's common law right to access judicial records (*i.e.*, documents filed with the court and documents that are incorporated in the court's adjudicatory proceedings) is presumed. *Id.* at 670 (citing *Goldstein v. Forbes* (*In re Cendant Corp.*), 260 F.3d 183, 192-93 (3d Cir. 2001)). This common law right of access "promotes public confidence in the judicial system"; "diminishes possibilities for injustice, incompetence, perjury, and fraud"; and "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.* at 677 (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).

However, this "common law right of access is 'not absolute.'" *Avandia*, 924 F.3d at 672 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). While the kinds of information courts protect from disclosure is narrow, courts do protect from disclosure information that could potentially pose a security risk, reveal trade secrets, or otherwise harm a litigant's competitive standing. *See e.g.*, *Avandia*, 924 F.3d at 679 (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991) (recognizing that it is permissible to seal records that "are sources of business information that might harm a litigant's competitive standing."); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993) (noting that "[d]ocuments containing trade secrets or other confidential business information may be protected from disclosure"); *Cutsforth, Inc. v. Lemm*

4

*Liquidating Co., LLC*, Civ. No. 17-1025, 2020 WL 772442 at *2-3 (W.D. Pa. Feb. 18, 2020) (sealing from public access trade secrets and other confidential information that "derives independent economic value from not being generally known by others who can obtain economic value from its disclosure").

The party seeking to seal any part of a judicial record bears the burden of showing that "the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Mine Safety Appliances Co. v. North River Ins. Co.*, 73 F. Supp. 3d 544, 560 (W.D. Pa. 2014) (citations and internal quotation marks omitted). The party seeking closure must show that the interest in secrecy outweighs the presumption. *See id.* Moreover, the injury must be shown with specificity. *See id.* (citing *Publicker Inds., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). "'Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.'" *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 194).

When deciding to seal judicial records,[5] the district court must articulate "'compelling, countervailing interests to be protected'" through specific findings on the record concerning the effects of disclosure. *Avandia*, 924 F.3d at 672, 678 (quoting *In re Cendant Corp.*, 260 F.3d at 194). Here, the Court examined unredacted versions of the documents at issue and notes that these

---

[5] An analysis for preserving the confidentiality of discovery materials through a protective order under Federal Rule of Civil Procedure 26 is conducted using the *Pansy* factors. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see also Avandia*, 924 F.3d at 671. Some of the *Pansy* factors may provide guidance for a common law right of access analysis, but the *Pansy* factors do not displace the common law standard. *Avandia*, 924 F.3d at 676. The *Pansy* factors are as follows: "1. whether disclosure will violate any privacy interests; 2. whether the information is being sought for a legitimate purpose or for an improper purpose; 3. whether disclosure of the information will cause a party embarrassment; 4. whether confidentiality is being sought over information important to public health and safety; 5. whether the sharing of information among litigants will promote fairness and efficiency; 6. whether a party benefitting from the order of confidentiality is a public entity or official; and 7. whether the case involves issues important to the public." *Id.* at 671. However, some of the *Pansy* factors, including factors two and three, are inconsistent with the standard of the common law right of access. *Id.* at 676-77.

documents contain photographic depictions of Defendant's facilities that are otherwise restricted from public access for security purposes, as well as highly confidential business information the disclosure of which could harm Defendant's competitive standing.[6]  Based upon the record before the Court at this stage of the litigation, and based upon the individualized analysis of each proposed redaction or seal request as specified *supra*, the Court finds that the Defendant's interest in maintaining the confidentiality of these materials outweighs the public presumption of access to these materials.  Accordingly, the Court finds that Defendant's request that Plaintiffs redact or seal these documents meets the applicable common law standard for doing so.

The Court must now determine whether this information should also remain sealed under the First Amendment right of access.  When the First Amendment right attaches, "[a]ny restriction on the right of public access is . . . evaluated under strict scrutiny" and a party may only rebut the presumption in favor of access by "demonstrate[ing] an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Avandia*, 924 F.3d at 673 (internal citations and quotation marks omitted).  The party seeking to seal the information, Defendant here, "bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue."  *Publicker*, 733 F.2d at 1071.

Again, the record before the Court reflects that the documents at issue contain photographic depictions of Defendant's facilities that are otherwise restricted from public access for security purposes, as well as highly confidential business information the disclosure of which could harm

---

[6] At this juncture and with the limited record before it, the Court has not yet discerned whether Defendant's response to Interrogatory No. 5 contains information that constitutes trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., or the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301 *et seq*.  However, such determination is not necessary because the Court may seal proprietary or otherwise confidential material regardless of whether such material constitutes a trade secret.  *See Avandia*, 924 F.3d at 679 (observing that "courts may permissibly seal judicial records where they are sources of business information that might harm a litigant's competitive standing") (internal quotation marks and citation omitted).

Defendant's competitive standing.  These materials are of the kind that courts will protect.  *See Cutsforth*, 2020 WL 772442.  Moreover, the Court also finds good cause for sealing or redacting versions of these documents because of the potential harm that public access to those materials would bear upon Defendant.  Finally, the Court finds that redacting or sealing this limited amount of specific documents is narrowly tailored to serve that interest.

### III. CONCLUSION

Accordingly, the Court grants Defendant's Motion and hereby grants leave for Plaintiffs to file sealed and redacted copies of these specified documents.

An appropriate order follows.

*/s W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated:  August 13, 2021

cc/ecf:  All counsel of record